**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
────────────────────────────────────

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

                  **v.**        **09-CR-203S(Sr)**

**CHARLES MENSAH,**

          **Defendant.**
────────────────────────────────────

## DECISION AND ORDER

      This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #59.

## PRELIMINARY STATEMENT

      The defendant, Charles Mensah (hereinafter, "defendant" or "Mensah"), along with nineteen others was charged in a twenty-four count Indictment with having violated Title 21, United States Code, Section 846, Title 21, United States Code, Section 963 and Title 21, United States Code, Section 843(b).  Dkt. #1.  The defendant was charged in four separate counts, Counts 1, 2, 5 and 9.  *Id.*

      Presently pending before this Court is the defendant's omnibus motion for discovery, a motion to suppress all evidence or derivative information resulting from illegal eavesdropping and a motion to suppress defendant's statement.  Dkt. #142.  The government has filed its response to defendant's omnibus motion for discovery and the

motions to suppress evidence and defendant's statement, as well as a motion for reciprocal discovery.  Dkt. #236.  This Court's Decision and Order and/or Report, Recommendation and Order with respect to defendant's motions to suppress evidence and statements will be addressed and filed separately.  What follows is this Court's Decision and Order with respect to the defendant's omnibus motion for discovery.

## DISCUSSION AND ANALYSIS

**Bill of Particulars**

With respect to Count 1 of the Indictment, the defendant seeks the following information: the date when it is claimed that the conspiracy began; the date when defendant Mensah is alleged to have joined the conspiracy; the precise manner in which it is alleged that defendant Mensah became a member of the conspiracy; the identity of all known co-conspirators; and the identification of "elsewhere" as referred to in Counts 1 and 2.  Dkt. #142, p.3.

As a threshold matter, in its response the government maintains that defendant Mensah has failed to offer any specific facts, reasons or legal authority, to justify a finding that further particularization is necessary.  Specifically, with respect to defendant's request for a bill of particulars concerning the development of the conspiracies charged in Counts 1 and 2, the government maintains that it is not required to furnish details concerning the formation of a conspiracy, including when and how it was formed and when a particular defendant joined, because those details need

not be proven at trial.  Dkt. #236, p.10.  With respect to defendant's request for detailed information relating to specific overt acts alleged in furtherance of the conspiracies charged in Counts 1 and 2, the government argues that details such as the exact time and place of the overt acts and names of persons present are not properly the subject of a bill of particulars.  *Id*. at p.11.  Moreover, the government states that, "[t]he information in the Indictment, coupled with the discovery materials, which includes transcripts of defendant['s] intercepted conversations and many narrative reports of the investigation, more than adequately inform defendant[ ] of the facts essential to the pending charges."  *Id*. at p.12.  Finally, in its conclusion concerning defendant's request for a bill of particulars, the government states, "[b]ecause defendant will be provided with full discovery, exculpatory and impeachment material, a witness list, and exhibit lists, including 3500 materials, well in advance of trial, [he] will not be surprised by the evidence against [him] or be subject to future jeopardy in a way that might otherwise justify ordering the particulars sought."  *Id*. at p.13.

With respect to defendant Mensah's request for a bill of particulars revealing the identity of any co-conspirators, the government states that defendant Mensah knows the identity of his charged co-conspirators and "will learn more identities as trial preparations continue, to include disclosure of impeachment and so-called 3500 material."  Dkt. #236, p.10.  The government adds, "[t]he criminal investigation is continuing, and that investigation could be compromised if we were required to identify persons who might be charged or even questioned. The government likely will not

object to later requests for disclosure of the identities of unindicted co-conspirators as trial approaches, however." *Id.*

It has become axiomatic that the function of a bill of particulars is to apprise a defendant of the essential facts of the crime for which he has been charged. *United States v. Salazar,* 485 F.2d 1272, 1277-78 (2d Cir. 1973); *cert. denied*, 415 U.S. 985 (1974); *Wong Tai v. United States*, 273 U.S. 77 (1927). The charges in the Indictment, along with the discovery materials provided by the government, clearly inform the defendant of the essential facts of the crimes charged. As a result, the defendant is not entitled to, nor is he in need of, the "particulars" being sought for that purpose. Accordingly, defendant's request for a bill of particulars is denied.

> A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); *see also United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citing *United States v. Burgin*, 621 F.2d 1352, 1358-59 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980)); *see also [United States v.] Bortnovsky*, 820 F.2d [572] at 574 [(2d Cir. 1987)]. "Acquisition of evidentiary detail is not the function of the bill of particulars." *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968).

*United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir.), *cert. denied*, 543 U.S. 994 (2004); *United States v.*

*Porter*, No. 06-1957, 2007 WL 4103679 (2d Cir. Nov. 19, 2007), *cert. denied*, 128 S.Ct. 1690 (2008).

**Rule 404(b), 608 and 609 Material**

By this request, the defendant requests "that the government disclose any alleged crimes, wrongs or acts of this Defendant which the government intends to offer at trial sufficiently in advance of trial to permit meaningful use by the defense." Dkt. #142, p.4. In its response, the government states that,

> [t]he government expects to timely disclose evidence that might fall within the ambit of Fed.R.Evid. 404(b), 608(d) and 609. The government intends to seek to introduce at trial evidence of this activity, as well as similar activity. ... In this case, defendants have not advanced any concrete reason for early disclosure of Rule 404(b) evidence and, therefore, their request should be denied, without prejudice. The government will disclose evidence in its possession that might fall within Fed.R.Evid. 404(b), 607, 608 and 609, and provide notice of its intention to rely upon such evidence when ordered to do so by the trial court. Specifically, at this time, the government is unaware of any evidence within the ambit of Fed.R.Evid. 609, which could be used at trial to impeach the credibility of defendants upon cross-examination. With respect to the disclosure of evidence which falls within Fed.R.Evid. 608, the government notes that it has no obligation to provide a defendant with any information that could be used to impeach him pursuant to Rule 608, should he elect to testify. Furthermore, the government preliminarily notifies defendants that it intends to introduce at trial, pursuant to Rule 404(b), all prior criminal conduct acts or wrongs to show proof of a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident. ... The government will provide defendants with more definitive notice of its intent to rely on Rule 404(b) evidence when

> directed to do so by the trial judge, or during trial, if pretrial
> notice is excused for good cause.

Dkt. #236, pp.24-25.


Rule 404(b) only requires that "the prosecution. . . provide reasonable notice in advance of trial. . . of the *general* nature of any such evidence it intends to introduce at trial." (Emphasis added).  Insofar as the government has indicated that it intends to comply with any pretrial disclosure order entered by the trial judge and further, that it understands its disclosure obligations, defendant's request is denied as moot.  The Court notes that the issue of admissibility of such evidence pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence is best left to the determination of the trial judge at the time of trial.  Accordingly, the defendant's request for an Order with respect to admissibility of such evidence is denied.


With respect to the defendant's request pursuant to Rule 608, Rule 608 does not contain the same pretrial notice as set forth in Rule 404(b).  Therefore, there is no requirement on the part of the government to make any disclosure of evidence, or its intent to use evidence at the trial pursuant to Rule 608 at this time.  Therefore, defendant's request in this regard is denied.  With respect to the defendant's request pursuant to Rule 609, based on the representations made by counsel for the government, defendant's request is denied as moot.  The government is hereby reminded that should the government learn of evidence of other crimes, wrongs and acts it intends to offer pursuant to Federal Rules of Evidence Rules 608 and 609

(impeachment material) during the trial, the government is hereby directed to provide such information consistent with its disclosure of *Jencks* material and the disclosure requirements set by the trial judge in advance of the trial.

**Disclosure of Material Pursuant to Federal Rule of Evidence 801(d)(2)(E)**

By this request, the defendant seeks an Order from this Court requiring the government to disclose any statements of alleged co-conspirators which the government will offer at trial against defendant Mensah, as well as the date when it will be claimed that such statements were made. Dkt. #142, p.4. Because defendant Mensah asserts that the date when such statements were made may impact the admissibility of the statements, he further requests that such statements be disclosed sufficiently in advance of trial to permit meaningful use by the defense. *Id*.

The government opposes the defendant's request for disclosure of statements of co-conspirators on the grounds that the statements requested are "well beyond the scope of the definition of a defendant's statements in Rule 16(1)(1)(A) through (c) and are not subject to pretrial disclosure under well-settled law." Dkt. #236, pp.15-16. The government further asserts,

> testimony of out-of-court co-conspirator statements during the course of and in furtherance of a conspiracy is not hearsay testimony; co-conspirator statements are admissions of a party opponent that are specifically excluded from the definition of hearsay. The government as a general matter does not expect to use co-conspirators' statements that may be hearsay because those statements were not made during the course of and in furtherance of a conspiracy, in any event.

-7-

* * *

> Certainly, the United States will proffer evidence in support
> of the admission of out-of-court co-conspirator statements at
> the time designated by the trial court.  Because defendants
> offer no legal authority or practical justification for an early
> proffer or discovery of hearsay statements that may be used
> during a proffer for a Rule 104(a) ruling that a statement is
> admissible as a co-conspirator statement pursuant to Rule
> 801(d)(2)(E), their motions seemingly seeking an order
> requiring that disclosure should be denied.  In any event,
> denial of the motions at this time will not prejudice
> defendants, as we expect there will be timely disclosure of
> documents and 3500 material that is more than sufficient to
> support a preliminary finding of a foundation for admission of
> any co-conspirator statements, according to the schedule to
> be set by the trial court.

*Id*. at pp.16-17.

Because Rule 801(d)(2)(E) of the Federal Rules of Evidence does not contain a required pretrial notice, there is no requirement on the part of the government to make any such disclosure of this type of evidence at this time.  As a result, defendant's request in this regard is denied.  Any request to exclude such statements at the trial, is a matter left to the discretion of the trial judge.

**Disclosure of Brady Material**

By this request the defendant is seeking the disclosure of *Brady* and *Giglio* material.  Dkt. #142, pp.5-8.  In its response the government states,

> [t]he government believes it is complying with its obligations
> to provide this potentially exculpatory information to
> defendants.  Specifically, we are aware of no evidence that
> a defendant was operating under duress, as a result of

> coercion, or under imperfect duress of coercion. . . .  As a
> practice, the government discloses directly exculpatory
> information as soon as we become aware of it, and are
> complying with the obligation to disclose exculpatory
> material to permit defendants to make effective use of the
> material before trial.  To the extent that additional Brady and
> impeachment material becomes known to the government,
> we will endeavor to disclose it sufficiently in advance of the
> proof for the information to be effectively useful to
> defendants.

Dkt. #236, pp.26-28.


"[A]s a general rule, *Brady* and its progeny do not require immediate

disclosure of all exculpatory and impeachment material upon request by a defendant."

*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).  The prosecution is obligated

to disclose and turn over *Brady* material to the defense "in time for its effective use."  *Id.*

at 144.  With respect to impeachment material that does not rise to the level of being

*Brady* material, such as *Jencks* statements, the prosecution is not required to disclose

and turn over such statements until after the witness has completed his/her direct

testimony.  *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In re United States*, 834 F.2d

283 (2d Cir. 1987).  However, if the government has adopted a policy of turning such

materials over to the defendant prior to trial, the government shall comply with that

policy; or in the alternative, produce such materials in accordance with the scheduling

order to be issued by the trial judge.


Based on the representations made by counsel for the government as to

its obligations under *Brady* and *Giglio,* the defendant's request is denied, but the

government is hereby directed to comply with the Second Circuit Court of Appeals'
holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v.*
*Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials
to the defendant.

        The government did not respond to that portion of the defendant's request
which seeks the names, addresses and statements of any persons interviewed by or on
behalf of the government or who are known to have been witnesses to the events
underlying the charge, and whom the Government does not intend to call as witnesses.
Notwithstanding his request, the defendant has offered no "particularized showing of
need" for same.  *See United States v. Hennings,* No. 95-CR-0010A, 1997 WL 714250,
at *13.  Rule 16 of the Federal Rules of Criminal Procedure does not require such
disclosure, and because there has been no showing of need, the request is denied.
*See id.; United States v. Bejasa,* 904 F.2d 137, 139 (2d Cir.), *cert. denied,* 498 U.S. 921
(1990); *United States v. Johnson,* No. 92-CR-39A, 1994 WL 805243 (W.D.N.Y. May 26,
1995), *aff'd,* 108 F.3d 1370 (1997); *United States v. Pastor,* 419 F. Supp. 1318, 1320
(S.D.N.Y. 1975).

**Disclosure of *Jencks* Material**

        By this request, the defendant seeks the early disclosure of witness
statements pursuant to Title 18, United States Code, Section 3500.  Dkt. #142, p.8.  In
its response, the government states,

> [t]he United States opposes defendant['s] request for
> immediate disclosure of <u>Jencks</u> Act material, and will comply
> in this case with our practice and that of the trial court to
> disclose witness statements before trial.  That practice
> should be followed because [the] defendant[ ] [has] failed to
> make any showing of good cause for the extraordinary,
> expedited relief sought. . . . Nonetheless, the government
> agrees to provide witness statements required by Title 18,
> United States Code, Section 3500, at the time set by the trial
> court according to its usual practice.  However, the
> government reserves the right to withhold witness
> statements until a witness has completed direct testimony
> where production of that statement before trial would expose
> the witness to retaliation or endanger the witness or his/her
> family.

Dkt. #236, pp.28-29.


As noted above, with respect to impeachment material that does not rise

to the level of being *Brady* material, such as *Jencks* statements, the prosecution is not

required to disclose and turn over such statements until after the witness has

completed his or her direct testimony.  *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In

re United States*, 834 F.2d 283 (2d Cir. 1987).  However, if the government has

adopted a policy of turning such materials over to the defendant prior to trial, the

government shall comply with that policy; or in the alternative, produce such materials

in accordance with the scheduling order to be issued by the trial judge.


Based on the representations made by counsel for the government, that it

will comply with the trial judge's pretrial order concerning the disclosure of witnesses'

statements, the defendant's request is denied.  Notwithstanding the foregoing, the

government is hereby directed to comply with the Second Circuit Court of Appeals'

holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v.*

*Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials

to the defendant.


**Joinder of Motions of the Co-Defendants**

        The defendant seeks to join in any motion filed by any of his co-

defendants. Dkt. #142, p.8.  This request is granted with the further directive and finding

that the decision made by this Court as to each of the co-defendant's requests

contained in the motion in which this defendant joins shall also be deemed to be the

finding and Order of this Court as to the defendant herein.


**Discovery**

        As a threshold matter, "[t]his defendant acknowledges that the

government has provided his counsel with CDs containing discovery material and in

particular, reports of the governments [sic] investigation."  Dkt. #142, pp.8-9.

Notwithstanding the foregoing, the defendant states, "[i]n that discovery material,

reference is made to a waiver of rights form, alleged to have been executed by this

Defendant on June 17, 2009.  It is requested that the government be required to

provide Defendant's counsel with a copy of that waiver of right form [sic] and that the

original form be made available for inspection."  *Id*. at p.9.  In addition, the defendant

requests the disclosure of the following:

any property not already disclosed.  Any "property" as
defined in Fed.R.Crim.P. 16(c) which refers or relates to any
alleged illegal or wrongful act which is not referred to in the
Indictment and which the government will endeavor to prove
at trial.  Each and every statement of a co-conspirators [sic]
which will be relied upon at trial by the government to
demonstrate the requisite existence of the conspiracy
charged in Count 2.  All police investigative reports,
complaints, evidence logs, inter-departmental memos, or
other documents maintained by any state or local police or
law enforcement agency relevant to any of the actions or
conduct referred to in the Indictment or considered by the
Grand Jury in bringing the Indictment . . .  This request
includes criminal history information related to any
defendant and any potential witness and any documents
concerning any alleged offense underlying the indictment.
All investigative reports or documents prepared by the
United States government . . . relating to the conduct
charged in the present Indictment or considered by the
Grand Jury in bringing the Indictment . . .  It may be that at
trial the government will seek to rely on expert testimony.
Such expert testimony has routinely been permitted.  In view
of the impact such testimony could have, it is essential for
the defense to be apprised of such evidence as soon as
possible.  Accordingly, it is requested that the government
be compelled to comply with its obligations under Fed. R.
Crim. P. 16(a)(1)(E) at an early stage in this case.

Dkt. #142, pp.8-10.


### Waiver of Rights Form

        The government does not specifically address defendant Mensah's

request for disclosure of the waiver of rights form referenced in the voluntary discovery

previously provided.  Notwithstanding the foregoing, to the extent that the waiver of

rights form signed by defendant Mensah has not yet been disclosed to counsel for the

defendant, the government is directed to disclose the document forthwith.


-13-

**Property**

As quoted above, the defendant uses the term "property" in the context of Rule 16(a)(1)(E) and Rule 16(c) of the Federal Rules of Criminal Procedure.  Although the government does not specifically respond to defendant Mensah's request for "property" not already disclosed, the government states in its response,

> [s]ince the Indictment, the United States has complied, and intends to continue to comply with the requirements of Rule 16.  To that end, the United States has provided comprehensive voluntary discovery, including, but not limited to, defendant's statements, reports, photographs, recordings of court-authorized intercepted communications, criminal records of each defendant to that defendant, transcripts of intercepted communications, laboratory reports, and eyewitness identifications.  As the government identifies any other evidence which falls within the scope of Rule 16, it will provide that evidence to defense counsel, thereby continuing to comply with its disclosure duties un Rule 16(c).

Dkt. #236, pp.13-14.  Based on the representations made by counsel for the government concerning its clear understanding of the government's ongoing discovery obligations, the defendant's request is denied as moot.

**Co-Conspirator's Statements**

By this request, the defendant seeks the disclosure of "each and every statement of a co-conspirators [sic] which will be relied upon at trial by the government to demonstrate the requisite existence of the conspiracy charged in Count 2."  Dkt. #142, p.9.  This request is duplicative of defendant's request for material pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.  For the reasons stated above, defendant's request is denied.

**Police Investigative Reports, Complaints, Evidence Logs**

By this request, the defendant seeks, all police investigative reports,

complaints, evidence logs, inter-departmental memos, or other documents maintained

by any state or local police or law enforcement agency, including the criminal history

information relating to any defendant and any potential witness.  Dkt. #142, p.9.  The

government opposes the defendant's motion which seeks a "blanket order requiring

disclosure of all documents that even defendants concede are exempted [sic] from or

not subject to disclosure under Rule 16 and that are subject to disclosure, if at all, only

later as 3500 materials."  Dkt. #236, pp.19-20.  The government further notes that it is

the trial court's practice to set a deadline for disclosure of Rule 3500 and related

materials.  Furthermore, the government argues that absent a showing of good cause,

the usual practice established by the trial court should be followed.  *Id*. at p.20.


With respect to that portion of the defendant's request that seeks criminal

history information relating to any defendant and any potential witness, the government

states in footnote three of its response, "[t]he government provided a copy of the

criminal history for each defendant when counsel appeared in court on that defendant's

behalf."  Dkt. #236, p.14, n.3.  With respect to the criminal history information of other

defendants and potential witnesses, such information is more properly sought pursuant

to the *Jencks* Act.  Consistent with this Court's discussion of defendant's request for the

early disclosure of *Jencks* Act material and counsel for the government's

representations concerning such disclosures, counsel for the government is reminded

of this Court's earlier direction concerning compliance with the Second Circuit Court of

Appeals' holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United

States v. Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those

materials to the defendant.  Accordingly, based on the foregoing, defendant's request is

denied as moot.


### Expert Witnesses

By this request, the defendant seeks an Order compelling the government

to comply with its obligations under Rule 16(a)(1)(E) of the Federal Rules of Criminal

Procedure.[1]  Dkt. #142, pp.9-10.  In its response, the government states, "the

government expects to provide disclosure of the credentials and methods used by the

forensic chemists during their analyses and in support of their expert opinions.  The

government reserves the right to offer the testimony of other experts, and if the

government decides to use such an expert, it will comply with Fed.R.Crim.P. Rule

16(a)(1)(G) and Fed.R.Evid. 702, 703, and 705."  Dkt. #236, p.26.  Accordingly, based

on the representations made by counsel for the government, defendant's request is

denied as moot.


### Preservation of Agents' Notes

By this request, the defendant seeks an Order from this Court requiring

---

[1] The Court notes that by reason of the other language contained in this request, the defendant is clearly seeking expert witness information, however, the defendant mistakenly cites to Rule 16(a)(1)(E).  The appropriate citation should be to Rule 16(a)(1)(G) which addresses expert witness disclosure requirements.

all government agents and officers who participated in this investigation to retain and

preserve all rough or handwritten notes taken as part of their investigation.  Dkt. #142,

p.10.  In its response, the government states,

> [t]he United States has no objection to the request that
> government agents retain notes taken during the
> investigation of this case.  As a matter of routine practice, all
> federal law enforcement agencies already do so; and the
> prosecutor will request the agents to retain their notes
> relevant to this investigation.  However, we note that
> defendant's request covers material that may not be <u>Jencks</u>
> material and may exceed the United States' obligation under
> Title 18, United States Code, Section 3500 and Fed. R.
> Crim. P. 26.2.  The retention of notes of agents is not
> required as long as the notes are subsequently incorporated
> into a final report.  Moreover, even if retained, rough notes
> are not discoverable, even as <u>Jencks</u> Act material.

Dkt. #236, p.33.


        Although perhaps unnecessary, based on the representations made by

counsel for the government concerning its acknowledgment of its obligation and its

agreement to instruct the agents to retain and preserve rough notes, the express

admonition of the Court of Appeals for the Second Circuit bears repeating in addressing

this particular request of the defendant wherein the Court stated:

> [W]e will look with an exceedingly jaundiced eye upon future
> efforts to justify non-production of a Rule 16 or Jencks Act
> "statement" by reference to "departmental policy" or
> "established practice" or anything of the like.  There simply is
> no longer any excuse for official ignorance regarding the
> mandate of the law.  Where, as here, destruction is
> deliberate, sanctions will normally follow, irrespective of the
> perpetrator's motivation, unless the government can bear
> the heavy burden of demonstrating that no prejudice
> resulted to the defendant. . . .  We emphatically second the
> district court's observation that any resulting costs in the

-17-

> form of added shelf space will be more than
> counterbalanced both by gains in the fairness of trials and
> also by the shielding of sound prosecutions from
> unnecessary obstacles to a conviction.

*United States v. Buffalino*, 576 F.2d 446, 449-50, (2d Cir.), *cert. denied*, 439 U.S. 928

(1978); *see also United States v. Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980);

*United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975), *cert. denied*, 429 U.S. 821

(1976). Accordingly, the government is hereby directed to maintain and preserve all

materials that are known by the government to exist, that constitute potential *Jencks*

material in this case.


In addition, the defendant seeks an Order from this Court directing the

government to assemble a list of all documents discoverable under Rule 16 of the

Federal Rules of Criminal Procedure and under *Brady* which were destroyed by the

government. Dkt. 142, p.10. Insofar as this Court is presently unaware of any

discoverable documents that may have been destroyed by the government, this request

is denied without prejudice.


**Leave to Make Other Motions**

> By this request, the defendant,
>
> respectfully requests and [sic] Order of the Court allowing
> him to make such further and additional motions as become
> necessary by due process of law, by the Court's ruling with
> respect to the relief sought herein, by additional discovery
> provided by the government or investigation made by the
> defense, and/or by any information provided by the
> government in response to the defendant's demands. The

> specific requests contained in this motion are not meant to
> limit or preclude future requests by the defendant for further
> relief from the Court as appropriate.

Dkt. #142, p.10.  Subject to the limitations contained in the aforesaid quotation, the

defendant's request to make further and additional motions that may be necessary is

granted.


**Audibility Hearing**

> Defendant has requested an audibility hearing and that request states,

> [t]o date, your deponent has been provided with compact
> disc "CD" recordings which present audibility issues in that
> some of the conversation [sic] recorded on the CDs is
> spoken in a language other than English.  Some of the
> conversations do not appear to be recorded in their entirety
> and all of the conversation [sic] spoken in English is [sic] not
> entirely audible.

Dkt. #142, pp.10-11.  The defendant does not, however, specifically identify any

telephone conversations he believes to be inaudible.  In its response, the government

agrees that audibility hearings may be appropriate if the parties cannot resolve a

question of tape audibility and/or transcript accuracy.  Dkt. #236, p.36.  The government

notes, however, that it is the defendant's obligation in the first instance to identify

recordings or portions of recordings that he deems to be inaudible.  It remains unclear

from defendant's motion whether any such recordings alleged to be inaudible have

even been identified.  Accordingly, insofar as the defendant has not specifically

identified a single recording that he believes is inaudible, defendant's request for an

audibility hearing is denied without prejudice to the right to re-apply for such relief after

the recordings have been reviewed and it is determined that there is an audibility issue that needs to be resolved by this Court.

        To the extent that the government has not already done so, the government is hereby directed to identify those recordings that it intends to use at the trial of the defendant and to have transcripts of those recordings prepared.  Once such transcripts have been prepared, counsel for the government shall supply copies of the designated recordings and respective transcripts to counsel for the defendant.  Counsel for the defendant is hereby directed to review the aforesaid recordings and transcripts after receipt of same, and upon completion of such review, make known to counsel for the government those portions of the aforesaid recordings that counsel for the defendant claims are inaudible or, in the alternative, inaccurately transcribed. Thereafter, counsel for the government and the defendant are directed to confer for the purpose of resolving any disputes that may exist as to audibility of the recordings in question and the correctness of the transcripts of such recordings.  Should the attorneys be unable to resolve any such disputes that may exist, counsel for the defendant may file a motion for an audibility hearing, which motion must be filed and served within ten days after the last conference between the attorneys seeking to resolve such issues.

**Government's Request for Reciprocal Discovery**

In addition to the relief requested by the defendant, the government has made a request for reciprocal discovery. Dkt. #236, p.94. The government has requested that the defendant permit it to inspect and copy all books, papers, documents, photographs and other tangible objects which the defendant intends to introduce as evidence-in-chief at the trial. In addition, the government seeks to inspect all reports of physical or mental examinations and of scientific tests or experiments, within the possession or control of the defendant along with written summaries of expert witness testimony that the defendant intends to use at trial. Since the defendant has moved pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure for similar materials and information, the government is entitled to this information pursuant to Rule 16(b)(1) and its request is granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    Buffalo, New York
          June 29, 2010

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**